*338 The opinion of the Court was delivered by
Wardlaw, J.
The Chancellor adjudges that, by fair implication from the articles of partnership between the testator of plaintiffs and the defendant, testator was bound by his contract to practice as a physician, to make proper charges for his skill and services, and to bring the compensation and gain of these services into the common fund for the advantage of both partners. Indeed, he adjudges in favor of the defendant all the propositions affirmed in his exceptions; and to this extent his opinion is uncontroverted and incontrovertible. It is of the very nature and essence of a partnership, that each partner shall exert due diligence arid skill, and devote his services and labors for the promotion of the common benefit of the concern, at such rate of compensation as may be stipulated; and that he shall not divert from the business of the firm that portion of diligence and skill he is bound to employ, nor engage in other business adverse to the common benefit. Sto. Part., 174-185. The partners are pledged to each other that the business shall be so conducted that each may see that it is proceeding prosperously, and not injuriously, to the common interest; and, as Judge Story says, sec. 181, each partner should keep precise accounts of all his own transactions for the firm, and have them always ready for inspection and explanation; if he receives any money for the firm he ought, at once, to enter the receipt in the books of the firm, so that it may be open to the inspection of all the partners. The testator of plaintiffs, while apparently in good health and full practice, from the beginning of the partnership, in January, 1850, until February, 1851, has rendered no account of his services and gains whatsoever, although, in the opinion of Dr. Fitch, he should have made twice as much as the defendant; and, although testator did enter charges in the books of the firm to the •amount of $3,000 for subsequent services. In the course of the year 1852, the body and mind of testator greatly failed, and the present plaintiffs intervening in his behalf, the part *339 nership was dissolved January 2, 1853, and the proportion of defendant in the profits of 1852 was extended largely beyond his proportion as stipulated in the original articles. The consideration expressed for this change in favor of defendant was “justice” to the defendant from the condition of Dr. Schmidt’s health in 1852, in consequence of which the “larger part”— it is not said the whole — of the practice of the office had devolved on the defendant. It was stipulated in the articles of dissolution that defendant “will attend to the making out and collection of the bills and debts due, and final closing up of the business of said partnership, distributing proceeds as collected, in accordance to the articles of copartnership up to January ], 1852, and for that year,” as therein stipulated. Testator died in the former part of the year 1853; and after-wards defendant rendered an account of his receipts and disbursements, with the caption: “Dr. J. W. Schmidt, in account with Dr. R. Lebby, in liquidation of late firm of Schmidt & Lebby,” closing with the entry: “1853, Aug. 1. Balance due estate of J. W. Schmidt, $2,157 08.” He also rendered a second account for 1853, with the caption: “Estate of Dr. J. W. Schmidt in account with Dr. Robert Lebby in liquidation ;” by which, after bringing in the former balance, he states, as of the date of December 31, 1853, “Balance of account to credit of Dr. S. to date, $2,302 32.” In this condition of things, the bill was filed March 4, 1856, praying that defendant should pay to the said plaintiffs “ the said balance of $2,302 32, and .account to them for amounts received by him on account of the said partnership since January 1, 1854,” and for general relief. The defendant, in his answer, filed May 14, 1856, admits that he rendered accounts exhibiting a balance in his hands from his transactions for the firm of $2,302 52; but he states that no account whatever has been rendered by Dr. Schmidt or his representatives of testator’s transactions in the business of the firm for the first thirteen months of the partnership, and he claims to retain the sum in his hands until the plaintiffs shall so ac *340 count; and swears to bis belief that if such account were fully and fairly stated, little or nothing would be left due by him. After answer, defendant filed a third account, headed: “Estate of J. W. Schmidt in account with Robert Lebby,” and closing:“ 1856, June I, by balance to credit (of plaintiffs) brought down, $407 84.” All the items in all of the accounts seem to be derived from the books kept by defendant, and the single book kept by Dr. Schmidt, beginning in February, 1851 ; and no full adjustment from all sources is professed. The Chancellor rejected the defendant’s claim for an account from the representatives of his partner, on the ground that defendant had “concluded himself by the account he has stated.” The defendant appeals for supposed error in this respect.
The defendant does not seek to surcharge or falsify the accounts he has rendered; on the contrary, affirms their accuracy: but he denies that they exceed a statement of his own transactions and of such of Dr. Schmidt’s as are found in one incomplete book, and that they amount, in any proper sense, to an account stated. We do not perceive, in the lights afforded to us, that these accounts are not exactly such in form and in substance as the defendant should have rendered, in case Dr. Schmidt or his representatives had rendered likewise full accounts as to his transactions concerning the partnership; nor that they were final; for defendant may have made subsequent collections, and consequently we do not find the evidence that they were intended to bar or waive an accounting from the other side. In bills for account, it is usually necessary to give jurisdiction to the Court of Equity, that there should be debits and credits, or one of them, on both sides; and in such suits the defendant is as much an actor as the plaintiff, and entitled to equal remedy and relief. Cross bills in such cases are very rare, unless the defendant seek discovery from the plaintiff as to matters not. suggested in the bill or insusceptible of proof aliunde. The plaintiff is entitled to an account current from *341 the defendant, sustained by oath, and the defendant ought to be in no worse position in regard to the plaintiff. In this case, the master reports that plaintiffs “allege that they have no account of the professional business of their testator during his connection with Dr. Lebby;” but this is probably an unsworn defence made through counsel, and may be formally true, although they have, or might obtain, full information and belief as to the extent and value of his services. The defendant has made a prima facie showing that Dr. Schmidt bestowed valuable services in the joint business, in the year 1850 and early part of 1851, and the plaintiffs should not be excused from all liability by reason of vague allegations or defective information on their part.
An account stated, in its proper meaning, implies a mutual accounting, and striking a balance, acknowledged on one side and accepted by the other. Sto. Eq. Pl., 798; Sto. E. J., 523, 526. Between partners, where there have been dissolution of the partnership and an adjustment of their affairs, showing that the concern was unprofitable, and that nothing was due from one partner to the other, but that their debts to creditors were payable by the partners in unequal portions, and such actual payment to creditors has been made — these circumstances are equivalent to an account stated. Such was our case of Main vs. Howland, Rich. Eq. Ca., 352. This matter of account stated is frequently pleaded by defendants in bar of further accounting, but it would be difficult to find a sound precedent for a plaintiff to employ it as ground for recovering a specific sum in equity. If he be really entitled, for such reason, to a certain sum, his appropriate remedy is at law by action of assumpsit. The plaintiffs in this case do not set up, in their bill, an account stated with any strictness of averment; and they certainly claim a further account from defendant; and it is not of regular procedure to do both in the same suit, and still bar the defendant from any counter claim.
Courts of Equity wisely foster the private adjustment and *342 settlement of disputed claims, but it is very unsafe to conjecture compromises without adequate proof. We do not see in the agreements for formation or dissolution of the partnership or elsewhere, satisfactory evidence that defendant has abandoned or waived, to any extent, or in any respect, the rights afforded to him by the law. It may be, as the master and Chancellor suppose, that by some process of irregular justice the defendant has obtained all the profit from this partnership that he is entitled to receive; but as ministers of the law, we think the defendant has the strict right to have the result ascertained by a regular procedure. We are aware that the master may have difficulty in attaining precise results in this case, but we trust that an approximation is at least probable.
It is ordered and decreed, that the circuit decree be set aside, and that the matters of account be recommitted to the master.
Johnstone, J., concurred.